# EXHIBIT 13

AGREEMENT

BETWEEN

ST. LOUIS POST-DISPATCH LLC

AND

ST. LOUIS NEWSPAPER GUILD/CWA
LOCAL 36047 OF THE NEWSPAPER GUILD
AFL-CIO, CLC

June 6, 2004 through June 5, 2009

GUILD00057

AGREEMENT

PREAMBLE

AN AGREEMENT made this <u>6TH</u> day of <u>June, 2004</u>, between St. Louis Post-Dispatch LLC also known as St. Louis Post-Dispatch (hereinafter referred to as the Employer), and the St. Louis Newspaper Guild/CWA (hereinafter referred to as the Guild) Local 36047, AFL-CIO, CLC, acting for itself and on behalf of the employees in the editorial/news department, advertising department, accounting department, circulation department, information systems, marketing department, and purchasing department of the Post-Dispatch; the telephone operators, building service and maintenance workers as covered by this Agreement in the building department; and those employees of the production department whose jobs within Guild jurisdiction are listed in Article V, Section 6, hereof.

ARTICLE I - BARGAINING AGENCY

1. The Guild shall be the sole collective bargaining agency for the employees in the categories listed above except as otherwise herein provided.

2. The work of employees shall be work normally performed by employees within the bargaining unit and new or additional work assigned to the unit by the Employer. However, nothing in this Agreement shall be construed as giving the Union exclusive jurisdiction over or an exclusive right to perform any work.
3. Bargaining Unit employees who are assigned to perform work outside the bargaining unit shall have the right to challenge any such work in accordance with Article II of the Agreement, if they feel it is unduly burdensome.

4. The Employer reserves the right to use independent contractors as stringers without limitation, to perform bargaining unit work. No stringer shall be contracted for the purpose of laying off a newsroom staff employee. Stringers shall be excluded from the bargaining unit.

5. Notwithstanding anything to the contrary in this Agreement, the Employer has the exclusive right to assign bargaining unit work to individuals employed by the Employer who are not covered by this Agreement or to individuals employed by any other employer or to contract out work.

The subcontracting of work or the assignment of work outside the bargaining unit which occurs during the term of this Agreement will not be the direct cause of layoff of any regular full-time or part-time bargaining unit employee employed on the effective date of this Agreement. It is further agreed that the no-layoff protection in this section shall cease and have no further force and effect on June 5, 2009.

2

GUILD00057.0002

6. The Employer shall furnish the Guild in writing within 15 days after their employment, the names, addresses, telephone numbers, Social Security numbers, dates of hiring, job classifications and experience rating of persons hired after the effective date of this Agreement. Each employee's job classification shall be listed in accordance with the schedules in Section 6 of Article V of this Agreement. Such list shall be available to the Guild. Whenever an employee's classification has been changed, the Employer shall notify the Guild in writing, provided this shall not apply to temporary assignments or to temporary employees.

7. All current employees, as a condition of employment, must pay to the Guild by not later than thirty (30) days following the execution of this Agreement or by not later than thirty (30) days following the beginning of their employment, whichever is later, the Guild's regular monthly union dues if they are a member of the Guild, or an agency shop fee, if they are not a member of the Guild in an amount not greater than the Guild's regular monthly union dues. The agency shop fee shall only be related to representational costs. A newly hired employee must meet this obligation by not later than thirty (30) days following the beginning of his or her employment with the Employer.

For purposes of this Section, compliance with the requirement of membership and compliance with the obligation to pay the initiation fee (if applicable) and dues requires only that the employee pay that percentage of the initiation fee (if applicable) and dues which is equal to the percentage of the union's expenditures which are used for properly chargeable representational activities of the Union. Compliance with the financial obligations set forth in this paragraph shall constitute compliance with the employee's union security obligations under this Article. This Article I, Section 7 shall not be construed or applied as imposing any obligation on any employee beyond those which can be proposed under the National Labor Relations Act.

The Employer shall be obligated to terminate the employment of an employee who fails to meet the requirements of this Section 7. The Guild will indemnify the Employer against all liability of any nature that the Employer may incur by reason of any discharge pursuant to a notice from the Guild.

8. The Employer shall collect and pay to the Guild not later than the 20th day of each month all membership dues levied by the Guild for the current month for each employee member of the Guild who has in writing, on a form furnished by the Employer, authorized the Employer to deduct such membership dues from any salary due him/her, in accordance with a table of membership dues furnished the Employer by the Guild, which table may be amended by the Guild at any time. The membership dues deduction assignment shall be made upon the following form:

3

GUILD00057.0003

Authorization to Deduct Guild Membership Dues

St. Louis, Missouri _____ 20_____
To the St. Louis Post-Dispatch:
I hereby authorize the St. Louis Post-Dispatch to deduct each week from
any wages then due me all membership dues owed by me to the St. Louis
Newspaper Guild in accordance with a table of membership dues furnished
the Employer by the Guild, and to pay such membership dues to the Guild.
This authorization may be revoked by me in writing upon 30 days' notice
to both the St. Louis Post-Dispatch and the St. Louis Newspaper Guild.

Name _____

Department_____

9.   The Guild shall indemnify and save the Employer harmless against
any and all claims, demands, suits, or other forms of liability that shall
arise out of or by reason of action taken by the Employer in complying with
their agreement to collect any monies from their employees as set forth in
this Article.

ARTICLE II - GRIEVANCE/ARBITRATION PROCEDURES

1.   A grievance is hereby jointly defined to be a claim or dispute
with the Employer by an employee or employees or by the Guild involving an
alleged violation by the Employer of the terms of this Agreement.

It is mutually agreed that a grievance shall be settled in the
following manner:
        Step 1. The grievance shall first be taken up with the immediate
supervisor in charge of the department provided the supervisor is available
within forty-eight (48) hours after the employee knew or should have known
of the events giving rise to the grievance.   No grievance shall be
entertained or processed unless it is submitted to the Employer in writing
within ten (10) working days (hereinafter defined as Monday through Friday)
after the employee knew or should have known of the event giving rise to
the grievance. The grievance shall be answered in writing to the Business
Manager of the Guild within ten (10) calendar days of receipt of the
written grievance.

        Step 2.   If the written answer fails to result in a satisfactory
settlement of the grievance, the matter may, within five (5) calendar days
after receipt of the written answer in Step 1, be referred by requesting a
meeting of the Joint Standing Committee through the Director of Industrial
Relations or his designated representative.   The Joint Standing Committee
shall meet within five (5) calendar days of the receipt by the Director of

4

Industrial Relations, or designated representative, of the request for a meeting. The Joint Standing Committee shall be composed of not more than five (5) representatives of the Employer and not more than five (5) representatives of the Guild. An employee shall not lose any pay if the Joint Standing Committee meeting occurs during an employee's regularly scheduled shift.

Step 3. If the grievance is not satisfactorily settled in accordance with the foregoing procedure, either party to this Agreement may, in writing, refer the grievance to arbitration (as provided in Sections 2 and 3 of this Article) within five (5) calendar days after the Joint Standing Committee meeting.

Step 4. If the grievance is submitted to arbitration in accordance with the above requirements, either party may request within five (5) calendar days after referring the grievance to arbitration the Federal Mediation and Conciliation Service to submit a list of seven (7) arbitrators' names, with no geographical restrictions, from which to select an arbitrator. When the list is received, either party may within five (5) calendar days of the receipt of the list reject the list and request that the Federal Mediation and Conciliation Service supply a second list of seven (7) new names. When the second list is received, the party not rejecting the first list may reject the second list within five (5) calendar days of receipt and request a third and final list of seven (7) new names from the Federal Mediation and Conciliation Service. The representative of the party requesting arbitration shall within five (5) calendar days of the receipt of a mutually agreeable list strike one name from the list. This process shall then be repeated with the parties alternating strikes in sequence until only one name remains. The person whose name remains on the list shall be the arbitrator.

## 2. - ARBITRATION PROCEDURE

The arbitrator chosen shall hear grievances as referred. The arbitrator shall not have the power to alter or amend any portion of the collective bargaining agreement. The arbitrator shall consider and decide only the particular issue presented. The arbitrator's decision and award shall be based solely upon the arbitrator's interpretation of the meaning or application of the express terms of this Agreement to the facts of the grievance presented. Unless otherwise mutually agreed, the submission to the arbitrator shall be based on the original written grievance submitted in the grievance procedure.

The award of the arbitrator shall be final and binding on the Employer, the Guild and the employee or employees involved. The fee and expenses of the arbitrator shall be divided equally between the Employer and Guild. The parties and the arbitrator shall make every effort to arrange for the prompt scheduling of the hearing and the expeditious rendering of a decision. Notwithstanding anything to the contrary in this Agreement, employees shall not be paid by the Employer for any time spent at any arbitration hearing between the Employer and the Guild, unless they are requested by the Employer to attend that arbitration hearing.

GUILD00057.0005

## SECTION 3- GENERAL PROCEDURES

A. Any of the time limits set forth above may be waived or extended by the mutual consent of the Guild and the Employer.

B. Should the Employer fail to respond to a grievance within the time period set forth above, the grievance shall be automatically advanced to the next step or, at the Guild's option, it may be immediately appealed to arbitration under the applicable arbitration procedure; provided, however, if the Guild fails to give notice of its intent to appeal a grievance to arbitration within five (5) calendar days of a Joint Standing Committee meeting in Step 2, or within fifteen (15) calendar days after the written grievance has been filed in Step 1 whichever is later, the grievance shall be considered settled on the basis of the Employer's last response.

## ARTICLE III - NO STRIKE/NO LOCKOUT

1. There shall be no strikes (including sympathy, unfair labor practice, or wildcat strikes), sit-downs, slow-downs, work stoppages, boycotts, any acts honoring a picket line or any other acts that interfere with the Employer's operations or the production or sale of its products or services during the term of this Agreement by the Guild, its officers, agents and members, or by the employees.

2. The Guild agrees that it will not authorize, ratify, or condone any strike or any other activity described herein. In the event of any strike or any other proscribed activity not authorized, ratified, or condoned by the Guild, the Guild and its officers, agents, and representatives will make every good faith effort to end such activity.

3. Any or all employees participating in any activity proscribed herein shall be subject to disciplinary action, including discharge.

4. The Employer shall have direct recourse to the National Labor Relations Board or the courts for a violation of this Article.

5. The Employer will not lockout during the term of the Agreement.

## ARTICLE IV - EXEMPTIONS

1. The following shall be exempt from the provisions of the Agreement.

EXECUTIVE - Publisher and Staff to included Administrative Assistant to the Publisher, General Manager, Secretary to the General Manager, Editor in Chief, Vice-President - Director Circulation, Vice-Presidents - Directors Advertising, Vice-President - Director Human Resources, Vice-President - Director Marketing, Vice-President - Director Production

ADVERTISING - Divisional Sales Managers, Project Manager/Special Sections - Retail, Project Manager/Special Sections - Majors, Business/Health Sales Manager, Special Sections Sales Manager, Training

6

GUILD00057.0006

Managers, Director Major Accounts, Major Accounts Manager/Coordinator, Preprint Sales Manager, Director On-line Sales, On-line Sales/Product Managers, Advertising Co-op Manager, Advertising Special Features Manager, Advertising Special Features Assistant Manager, Page Make-up Manager, Assistant Make-up Manager, Classified Sales Manager, Classified Supervisor, Auto Sales Manager, Real Estate Sales Manager, Director Media Marketing, Media Marketing Manager, Shared Mail/Pre-Print Manager, Advertising Analyst, Six (6) Confidential Secretaries

CIRCULATION - Circulation Operations Director, Circulation Operations Manager, Assistant Circulation Operations Manager, Director Circulation Administration, Circulation Administration Manager, Assistant Manager - Circulation Administration, Circulation Outside Sales Manager, Assistant Circulation Outside Sales Manager, Circulation Data Communications Manager, Single Copy/Home Delivery Manager, Transportation Manager, Address Maintenance & Routing Manager, Circulation Customer Service Manager, two (2) Customer Relations Managers, Circulation Inside Sales and Retention Manager, Circulation Consumer Advocate, Collection Manager, three (3) Confidential Secretaries

NEWS/EDITORIAL - Editor, Managing Editor, Assistant Managing Editors, News Administration Director, National and Foreign Editor, News Editors, Deputy Editors to Assistant Managing Editors in each news and features department, assistant editors and section editors in each news and features department, Chief of the Washington Bureau, Investigations Editor, Editor of the Editorial Page, Deputy Editorial Page Director, Electronic News Editors, Chief Clerk, News Design Director, Features Design Director, Copy Desk Chief, Assistant Copy Desk Chiefs, Zones Productions Chiefs, Graphics Editor, Director of Photography, Director of News Research, Assistant Director of News Research, Office Manager, Suburban Bureau Editors, Manager of Newsroom Technology, Systems Editors, Director of Newsroom Recruiting; Confidential Secretaries to the Editor, Managing Editor and Editorial Page Editor

PRODUCTION & BUILDING - Assistant Production Managers, Advertising Graphics Manager, Creative Teams Manager, Customer Ad Service Director, Assistant Director Customer Ad Services, Customer Ad Support Supervisor, Digital Services Technology Manager, Ad Processing Manager, Assistant Ad Processing Manager, Purchasing Director, Assistant Purchasing Director, Buyer, Facilities Project Manager, Cleaning Supervisors, Telephone Communications Manager, Chief Telephone Operator, Three (3) Confidential Secretaries

ACCOUNTING - Assistant Controllers, Assistant to the Controller(s), Confidential Secretary, Director Credit/Customer Ad Services, Customer Service Manager, Credit Manager, Process Auditor, Financial Analysts, Revenue Accounts Supervisor, Cashier, Assistant Cashier, Payroll Supervisor, Assistant Payroll Supervisor, Accounts Payable Supervisor, all payroll and accounts payable support staff including Sr. Payroll Clerks, Accounts Payable Clerks

GUILD00057.0007

INFORMATION SYSTEMS - Data Base Admin Manager & Data Processing Manager in support of remaining mainframe system programs until phased out

HUMAN RESOURCES - All Managers & Support Staff to include Security Manager & Supervisors, Security Officers, Security & Administrative Services Director, HR Generalists, Health & Safety Manager and staff, HR Training Manager and staff, Administrative Services & Conference Center Supervisor, Director of Employee Benefit Services, Assistant Director Employee Benefits, Benefit Specialists, Benefit Clerks, Secretaries, Labor and Industrial Relations Managers and staff

MARKETING - Marketing Production Manager, News Research Director, Consumer Marketing Operations Manager, Marketing Manager, Public Relations Manager, Media Relations Manager, NIE Manager, NIE Coordinator, NIE Sponsorship Manager, Sr. Research Analyst, Research Analyst, Director of Marketing/Consumer & Creative Services, Associate Research Director, Administrative Assistant

2.  No employee shall be required to accept an excluded position over his/her objections.  An employee whose position is excluded from the bargaining unit during the term of this Agreement and who refuses to work in that excluded position may be transferred to a bargaining unit position as determined by the Employer.

3.  Holders of excluded positions may perform bargaining unit work, without limitation and will have their wages, hours and other terms and conditions of employment determined by the Employer.

4.  In the event the Employer creates a new position during the term of this Agreement that it believes to be a managerial, supervisory and/or confidential position and a dispute arises over whether the position should be exempted from or included in the bargaining unit, it shall be resolved by arbitration.  The procedures stated in Article II of the collective bargaining agreement shall govern where appropriate.

The arbitrator's decision and award shall be based on the standards for a managerial, supervisory and/or confidential position as developed by the National Labor Relations Board, and considering the scope of the jobs exempted and covered by the Agreement.

The employer shall notify the Guild in writing, specifying job title and function, in advance of creating any such new position.

8

GUILD00057.0008

# ARTICLE V – WAGES

1. Beginning the effective date of this Agreement (June 6, 2004), The Employer agrees to pay not less than the following minimum wage rates:

   (a) The minimum weekly wage rates for employees in Schedules A through G and Miscellaneous Schedules shall be as follows:

| Minimum Wage Schedule | A | B | C | D | E | F | G |
|---|---|---|---|---|---|---|---|
| Inexperienced | 674.00 | 558.00 | 547.00 | 497.00 | 473.00 | 441.00 | 416.00 |
| 1 Year | 708.00 | 612.00 | 600.00 | 543.00 | 512.00 | 482.00 | 448.00 |
| 2 Years | 739.00 | 665.00 | 649.00 | 587.00 | 556.00 | 514.00 | 483.00 |
| 3 Years | 783.00 | 720.00 | 709.00 | 628.00 | 619.00 | 560.00 | 528.00 |
| 4 Years | 827.00 | 789.00 | 792.00 x | 674.00 * | | | |
| 5 Years | 884.00 | 840.00 | | | | | |
| 6 Years | 949.00 | | | | | | |
| 7 Years | 1009.00 | | | | | | |
| 8 Years | 1107.00 # | | | | | | |

# Except copy editors after eight (8) years experience, $ 1,120.00

* Except microfilm camera operator and film processor after 4 years experience $ 689.00

x Classified Advertising Sales Representatives, Electronic Work Station Operators, Newsroom Electronic System Aides and Newsroom Research Aides after five (5) years experience $ 817.00

x Advertising Telephone Sales Representatives after five (5) years experience $ 845.00

## MISCELLANEOUS SCHEDULES:

Cleaners . . . . . . . . . . . . . . . . . . $ 528.00
Night Cleaners . . . . . . . . . . . . . . $ 597.00
Apprentice (H) . . . . . . . . . . . . . . $ 393.00
Apprentice (H1) . . . . . . . . . . . . . . $ 250.00

Office, proof and copy messengers
Inexperienced . . . . . . . . . . . . . . . . . . $ 366.00
After 6 months experience . . . . . . . $ 379.00
After 1 year . . . . . . . . . . . . . . . . . . $ 385.00

Note: Increase in progression steps of 2.25%, Increase to top of Schedules A & B of 5% and Increase to top of Schedules C-M (Except H) of 6%

9

GUILD00057.0009

2. Beginning the first anniversary date of this Agreement (June 6, 2005), The Employer agrees to pay not less than the following minimum wage rates:

(a) The minimum weekly wage rates for employees in Schedules A through G and Miscellaneous Schedules shall be as follows:

| Minimum Wage Schedule | A | B | C | D | E | F | G |
|---|---|---|---|---|---|---|---|
| Inexperienced | 674.00 | 558.00 | 547.00 | 497.00 | 473.00 | 441.00 | 416.00 |
| 1 Year | 708.00 | 612.00 | 600.00 | 543.00 | 512.00 | 482.00 | 448.00 |
| 2 Years | 739.00 | 665.00 | 649.00 | 587.00 | 556.00 | 514.00 | 483.00 |
| 3 Years | 783.00 | 720.00 | 709.00 | 628.00 | 647.00 | 585.00 | 552.00 |
| 4 Years | 827.00 | 789.00 | 828.00 x | 704.00 * | | | |
| 5 Years | 884.00 | 874.00 | | | | | |
| 6 Years | 949.00 | | | | | | |
| 7 Years | 1,009.00 | | | | | | |
| 8 Years | 1,151.00 # | | | | | | |

\# Except copy editors after eight (8) years experience, $1,165.00

\* Except microfilm camera operator and film processor after 4 years experience $720.00

x Classified Advertising Sales Representatives, Electronic Work Station Operators, Newsroom Electronic System Aides and Newsroom Research Aides after five (5) years experience $854.00

x Advertising Telephone Sales Representatives after five (5) years experience $883.00

MISCELLANEOUS SCHEDULES:

| | |
|---|---|
| Cleaners . . . . . . . . . . . . . . . . . . | $ 552.00 |
| Night Cleaners . . . . . . . . . . . . . . . | $ 624.00 |
| Apprentice (H) . . . . . . . . . . . . . . . | $ 393.00 |
| Apprentice (H1) . . . . . . . . . . . . . . . | $ 250.00 |

Office, proof and copy messengers

| | |
|---|---|
| Inexperienced . . . . . . . . . . . . . . . | $ 382.00 |
| After 6 months experience . . . . . . | $ 396.00 |
| After 1 year . . . . . . . . . . . . . . . . | $ 402.00 |

Note: Increase to top of Schedules A & B of 4% and Increase to top of Schedules C-M (Except H) of 4.5%

10

GUILD00057.0010

3. Beginning the second anniversary date of this Agreement (June 6, 2006), The Employer agrees to pay not less than the following minimum wage rates:

(a) The minimum weekly wage rates for employees in Schedules A through G and Miscellaneous Schedules shall be as follows:

| Minimum Wage Schedule | A | B | C | D | E | F | G |
|---|---|---|---|---|---|---|---|
| Inexperienced | 674.00 | 558.00 | 547.00 | 497.00 | 473.00 | 441.00 | 416.00 |
| 1 Year | 708.00 | 612.00 | 600.00 | 543.00 | 512.00 | 482.00 | 448.00 |
| 2 Years | 739.00 | 665.00 | 649.00 | 587.00 | 556.00 | 514.00 | 483.00 |
| 3 Years | 783.00 | 720.00 | 709.00 | 628.00 | 670.00 | 605.00 | 571.00 |
| 4 Years | 827.00 | 789.00 | 857.00 X | 729.00 * | | | |
| 5 Years | 884.00 | 900.00 | | | | | |
| 6 Years | 949.00 | | | | | | |
| 7 Years | 1,009.00 | | | | | | |
| 8 Years | 1,186.00 # | | | | | | |

# Except copy editors after eight (8) years experience, $ 1,200.00

* Except microfilm camera operator and film processor after 4 years experience $ 745.00

x Classified Advertising Sales Representatives, Electronic Work Station Operators, Newsroom Electronic System Aides and Newsroom Research Aides after five (5) years experience $ 884.00

x Advertising Telephone Sales Representatives after five (5) years experience $ 914.00

MISCELLANEOUS SCHEDULES:

| | | | |
|---|---|---|---|
| Cleaners | . . . . . . . . . . . . . . . . . . | $ 571.00 | Office, proof and copy messengers |
| Night Cleaners | . . . . . . . . . . . . . . . . . | $ 646.00 | Inexperienced . . . . . . . . . . . . . . . . $ 395.00 |
| Apprentice (H) | . . . . . . . . . . . . . . . . | $ 393.00 | After 6 months experience. . . . . . $ 410.00 |
| Apprentice (H1) | . . . . . . . . . . . . . . . | $ 250.00 | After 1 year . . . . . . . . . . . . . . . . . . $ 416.00 |

Note: Increase to top of Schedules A & B of 3% and Increase to top of Schedules C-M (Except H) of 3.5%

11

GUILD00057.0011

4. Beginning the third anniversary date of this Agreement (June 6, 2007), The Employer agrees to pay not less than the following Minimum wage rates:

(a) The minimum weekly wage rates for employees in Schedules A through G and Miscellaneous Schedules shall be as follows:

| Minimum Wage Schedule | A | B | C | D | E | F | G |
|---|---|---|---|---|---|---|---|
| Inexperienced | 674.00 | 558.00 | 547.00 | 497.00 | 473.00 | 441.00 | 416.00 |
| 1 Year | 708.00 | 612.00 | 600.00 | 543.00 | 512.00 | 482.00 | 448.00 |
| 2 Years | 739.00 | 665.00 | 649.00 | 587.00 | 556.00 | 514.00 | 483.00 |
| 3 Years | 783.00 | 720.00 | 709.00 | 628.00 | 688.00 | 622.00 | 587.00 |
| 4 Years | 827.00 | 789.00 | 881.00 X | 749.00 * | | | |
| 5 Years | 884.00 | 925.00 | | | | | |
| 6 Years | 949.00 | | | | | | |
| 7 Years | 1,009.00 | | | | | | |
| 8 Years | 1,219.00# | | | | | | |

# Except copy editors after eight (8) years experience, $ 1,233.00
* Except microfilm camera operator and film processor after 4 years experience $ 765.00
x Classified Advertising Sales Representatives, Electronic Work Station Operators, Newsroom Electronic System Aides and Newsroom Research Aides after five (5) years experience $ 908.00
x Advertising Telephone Sales Representatives after five (5) years experience $ 939.00

MISCELLANEOUS SCHEDULES:

| | |
|---|---|
| Cleaners . . . . . . . . . . . . . . . . . . . . | $ 587.00 |
| Night Cleaners . . . . . . . . . . . . . . . . | $ 664.00 |
| Apprentice (H) . . . . . . . . . . . . . . . . | $ 393.00 |
| Apprentice (H1) . . . . . . . . . . . . . . . | $ 250.00 |

Office, proof and copy messengers
| | |
|---|---|
| Inexperienced . . . . . . . . . . . . . . . . | $ 406.00 |
| After 6 months experience . . . . . . . | $ 421.00 |
| After 1 year . . . . . . . . . . . . . . . . . . | $ 427.00 |

Note: Increase to top of all Schedules (Except H) of 2.75%

12

GUILD00057.0012

5. Beginning the fourth anniversary date of this Agreement (June 6, 2008), The Employer agrees to pay not less than the following Minimum wage rates:

(a) The minimum weekly wage rates for employees in Schedules A through G and Miscellaneous Schedules shall be as follows:

| Minimum Wage Schedule | A | B | C | D | E | F | G |
|---|---|---|---|---|---|---|---|
| Inexperienced | 691.00 | 572.00 | 561.00 | 509.00 | 485.00 | 452.00 | 426.00 |
| 1 Year | 726.00 | 627.00 | 615.00 | 557.00 | 525.00 | 494.00 | 459.00 |
| 2 Years | 757.00 | 682.00 | 665.00 | 602.00 | 570.00 | 527.00 | 495.00 |
| 3 Years | 803.00 | 738.00 | 727.00 | 644.00 | 705.00 | 638.00 | 602.00 |
| 4 Years | 848.00 | 809.00 | 903.00 X | 768.00 * | | | |
| 5 Years | 906.00 | 948.00 | | | | | |
| 6 Years | 973.00 | | | | | | |
| 7 Years | 1,034.00 | | | | | | |
| 8 Years | 1,249.00# | | | | | | |

# Except copy editors after eight (8) years experience, $ 1,264.00
* Except microfilm camera operator and film processor after 4 years experience $ 784.00
x Classified Advertising Sales Representatives, Electronic Work Station Operators, Newsroom Electronic System Aides and Newsroom Research Aides after five (5) years experience $ 931.00
x Advertising Telephone Sales Representatives after five (5) years experience $ 962.00

MISCELLANEOUS SCHEDULES:

| | |
|---|---|
| Cleaners | $ 602.00 |
| Night Cleaners | $ 681.00 |
| Apprentice (H) | $ 393.00 |
| Apprentice (H1) | $ 250.00 |

| Office, proof and copy messengers | |
|---|---|
| Inexperienced | $ 416.00 |
| After 6 months experience | $ 432.00 |
| After 1 year | $ 438.00 |

Note: Increase to all pay rates (Except H) of 2.5%

13

GUILD00057.0013

6.

SCHEDULE A:
Advertising artist.
Advertising copy writer.
Artist.
Circulation supervisor.
Copy editor - Print.
Correspondent in established bureaus.
Newsroom Online Content Editor.
News writer.
Outside advertising representative.
Photographer.
Reporter.
Production Editor.
Senior circulation dispatcher.
Senior programmer.
Senior systems analyst.

SCHEDULE B:
Assistant credit manager.
Assistant librarian in Reference Department.
+ Black-and-white advertising makeup person.
Circulation Dispatcher.
Circulation district representative.
Mainframe computer operator upon completing progression in
Schedule C.
Photo assistant.
+Marketing Department Copy Writer.
+Marketing Department Production Artist.
Newsroom Online News Producer.
Junior programmer.
Junior systems analyst.
Public affairs assistant.
Research specialist.
Roto-comic advertising makeup person.

+ Black-and-white advertising makeup person hired prior to December 1, 1994,
and Marketing Department Copy Writer and Production Artist hired prior to the
effective date of this Agreement shall remain in Schedule A.

SCHEDULE C:
Advertising telephone sales representatives.
Assistant advertising makeup persons.
Circulation statistician and auditor.
Classified telephone sales representatives.
Electronic work station operator.
Little Merchant district adviser.
Mainframe computer operator.
News Aide (Also known as Newsroom Aide)
Newsroom Research Aide.
TV program lister upon completing progression in Schedule D.

GUILD00057.0014

SCHEDULE D:
Advertising rate clerk.
News Clerk (Formerly Agate Processors & Financial News Clerks) in
News Department upon completing progression in Schedule E or if
chosen by the Employer for earlier advancement.
Building utility person.
Circulation utility person.
Copy and order expediter.
Inside sales coordinator.
Microfilm camera operator and film processor. (Minimum pay is the
`after 1 year's experience' scale).
Reference Department librarian.
Senior classified adjuster.
Senior payroll clerk.
TV program lister.

SCHEDULE E:
Advertising makeup clerk.
News Clerk (Formerly Agate Processors & Financial News Clerks)
while in progression, unless chosen by the Employer for earlier
advancement to Schedule D.
Books-music checker.
Cashier service representative.
Circulation Customer Service Representative.
Circulation clerk.
Classified adjuster.
Copy and order clerk.
Merchandising and research field representative.
Payroll clerk.
Promotion department utility person.
Purchasing, shipping, and office clerk.
Research assistant.
Sales secretary.
Secretary.
Senior accounting clerk.
Telephone collection clerk.
Voluntary classified advisor.

SCHEDULE F:
Advertising sales assistant.
Classified ad clerk.
Counter clerk.
Credit contact clerk.
Junior accounting clerk.
Key-punch operator/verifier operator.
Microfilm copier.
Statistical clerk.
Statistical typist.
Stenographer.
Telephone operator.

GUILD00057.0015

SCHEDULE G:
Circulation Department Delivery Person.
Clerical worker.
File room clerk.
Job room clerk.
Mail clerk.
Receptionist.
Stock clerk.
Typist.


SCHEDULE H:
The Employer may employ up to 12 college/university students and/or interns (excluding P.D. Scholarship recipients) in the summer and up to 8 college/university students and/or interns (excluding P.D. Scholarship recipients) during the remainder of the year at the apprentice (H) rate; up to 12 high school students in the summer and up to 6 high school students during the remainder of the year at the apprentice (H1) rate; up to 4 unpaid college/university students in connection with undergraduate and graduate programs. Students and interns shall not be entitled to seniority or benefits under this Agreement. No student or intern shall be contracted for the purpose of laying off a bargaining unit employee.


7.   Employees who are paid top scale in their classification shall not suffer a loss of pay unless the employee no longer holds that job classification.  In the event that they no longer hold that job classification, they will be paid at the appropriate minimum rate of their wage schedule.


8.   Applicable minimums for new job classifications which may be established during the life of this Agreement, or for jobs in which there have been significant changes of duties, shall be determined by the Employer.  The Employer shall not be arbitrary in setting the applicable minimum wage rates.   The appropriateness of the rate of pay shall be subject to the grievance procedure provided for in Article II of the Agreement.


9.   Notwithstanding anything to the contrary in this Agreement, in addition to the classifications identified in Article V, Section 6, the Employer shall have the sole and exclusive right to employ sales persons solely on a commission compensation or combination of a base plus commission compensation basis.  For the term of this Agreement, the Employer agrees the base portion of the base plus commission compensation programs for Retail, Major Accounts, National and Real Estate base plus commission outside sales employees shall not be less than the levels in affect on the effective date of this Agreement.

16

GUILD00057.0016

It is agreed that with the exception of those employees currently employed solely on a commission or base plus commission basis no employee hired prior to January 8, 1995, or who were working as salaried sales representatives as of May 1, 2004, shall be required to work solely on a commission or base plus commission compensation basis.

Notwithstanding any other provision in this Agreement, commission and base plus commission sales persons employed under this section, will be entitled to Holidays, Vacation, Sick Days as provided for in this Agreement with the understanding that the compensation they are entitled to will be their actual commission earned for such time off (inclusive of any base). The only exception to the foregoing will be if a commission or base plus commission sales employee is on medical leave of absence for longer than two full financial weeks the employee shall receive their base plus actual commission or their previous 12 week average of base plus commission, whichever is greater.

Regardless of commission or combination of base plus commission payments, all unexcused absences may be subject to possible disciplinary action under the contract and no payments of any kind shall be made for unexcused absences of a week or longer.

Sales persons employed solely on a commission compensation or combination of base plus commission compensation basis will be eligible to receive mileage reimbursement as set forth Article XII, Section 3.

10. The Employer shall have the sole and exclusive right to establish sales employee commission compensation programs, sales employee base plus commission compensation programs, and employee bonus programs and from time to time increase, decrease, discontinue or otherwise modify sales employee commission compensation programs, sales employee base plus commission programs and employee bonus programs.

GUILD00057.0017

11.  Sales employees employed on a commission or combination of base plus commission basis on the dates indicated below, shall receive the following bonuses within 10 working days of the date indicated.

> Signing Date of Agreement - $2000
> First Anniversary Date    -  $750
> Second Anniversary Date   -  $750
> Third Anniversary Date    -  $500
> Fourth Anniversary Date   -  $500

12.  All regular full-time and part-time employees, not on probation, shall receive a $500 signing bonus within ten days of the effective date of this Agreement (part-time to be pro-rated based upon year-to-date average hours worked).

## ARTICLE VI - GENERAL WAGE PROVISIONS

1.  Individual employees, or the Guild in their behalf, shall have the right to bargain with the Employer or his/her representatives for wages above the minimums.  The Employer shall have the sole and exclusive right to compensate an employee above the minimums set forth herein.

2.  Employees hired at or promoted to rates of pay in excess of the minimums specified for their experience shall be considered to have experience conforming to their rates of pay. Any dollar differential above the minimums which is caused by an employee having received a merit increase or a negotiated increase prior to the effective date of this Agreement shall be maintained for the period of time the employee retains the job classification in which he/she was given the merit increase. Merit increases earned after the effective date of agreement may be withdrawn by the Company.  Advancement in the awarding of an experience increase while the employee is in progression shall not be deemed a merit increase and the date of such advancement in awarding the experience increase shall become the experience anniversary in determining the employee's subsequent experience increases.

3.  Experience credit for earlier employment by the Employer or elsewhere may be given new employees, in the Employer's discretion.

4.  Employees transferred to other departments after satisfactory service in their old departments shall be given consideration for advancement in their experience ratings or for merit increases.  An employee transferred to a classification with a higher minimum schedule shall be paid not less than the minimum in the new classification which is next higher than the

18

GUILD00057.0018

salary he/she was receiving immediately prior to the transfer and shall be so classified for experience rating purposes. The experience anniversary for such employee shall be the date of such transfer, but at no time shall the employee's salary be less than the salary he/she would have been entitled to in the old classification. For purposes of this agreement, transfer means when an employee applies and is awarded another job classification or mutually agrees to change job classification or in connection with an assignment involving relocation to another city. No employee may be permanently transferred by the Employer to another classification or department (as defined in the preamble) over his/her objections.

The first six (6) months after transfer shall be considered a tryout period and, if the employee does not perform satisfactorily in the new job, in the Employer's judgment, he/she shall be returned by the Employer at any time during the tryout period to his/her former classification at the salary to which he/she would have been entitled had he/she remained there without the tryout transfer. Any employee who wishes to return to their former classification must make such a request in the first 30 days after transfer. The length of such tryout periods may be extended by agreement of the Employer and the Guild on a showing of cause. An employee assigned to take the place of an employee during such tryout period shall be returned similarly to his/her previous status in the event the employee so tried out does not qualify in the new position and is returned to his/her former position. An employee hired as a replacement in connection with such tryouts shall be a temporary employee within the meaning of Article XVII of this Agreement.

5. Employees may be assigned by the Employer to work in different classifications and/or positions or jobs within a classification. An employee assigned to work regularly in a lower classification shall continue to receive his/her current rate of pay. An employee assigned to work regularly in a higher classification shall receive the minimum pay of the higher classification, or his/her current rate of pay, whichever is higher, for the time spent performing work in the higher classification. Such an employee upon being returned to his/her regular classification may be returned to the rate of pay he/she would have received had he/she worked continuously in such regular classification. In those cases where there is no additional compensation to the employee when regularly assigned to a higher classification, the employee will receive the following additional minimum amounts of pay per day for the time spent performing work in the higher classification.

> Effective Date of Contract -- $4.00 per day
> 1st Anniversary Date -- $5.00 per day
> 2nd Anniversary Date -- $6.00 per day

GUILD00057.0019

An employees assigned to fill in for a supervisor will receive a minimum of $8.50 per day more than the employee would receive in the employee's regular classification for the time spent filling in for the supervisor.

No employee shall be assigned to work in another classification on a regular basis in excess of twelve (12) consecutive months unless otherwise agreed to by the employee.

An employee who transfers to a higher classification that they have previously regularly been assigned to work in, under the terms of this Section 5, shall be given consideration for advanced experience credit in the application of Section 4 of this Article VI. Satisfactory temporary service in a higher classification shall be a factor for consideration in filling vacancies.

6. All wages shall be paid on a weekly or every other week basis as determined by the employer.

ARTICLE VII - HOURS AND OVERTIME

1. Except as otherwise provided in Section 1 of Article XVII of this Agreement, the working day shall consist of seven hours and 30 minutes falling within eight hours and 30 minutes except in the case of employees other than Cleaners regularly scheduled for duty between 10:00 p.m. and 6:00 a.m. in which case the regular "straight" time for that shift shall consist of six hours and 30 minutes falling within seven hours or seven hours and 30 minutes whichever is scheduled by the supervisor. The "straight" time for Cleaners shall be seven hours and 30 minutes for night shifts as well as on day shifts. All time in excess of the number of hours established for the employees shift in accordance with this section shall be paid at time and one-half of the employees regular straight-time rate. Five shifts shall constitute a week's work for full-time employees and any shifts in excess of five shall be paid at the overtime rate of time and one-half the employee's regular straight-time rate.

1(a) Notwithstanding any other provisions in this Agreement including Section 1 of this Article, employees may be scheduled to work four (4) day workweeks. In the event there are no volunteers to work the 4 day work week schedule, the Employer, in its sole discretion, may select the most qualified least senior employee to work the 4 day work week schedule. Two (2) weeks advance notice shall be given by the Employer of its intent to change from a five (5) day to a four (4) day work scheduled or vice versa. The regular work day for employees on a four (4) day work week schedule shall consist of nine (9) hours and twenty-two (22) minutes, excluding a thirty (30) minute lunch period. Time worked in excess of nine (9) hours and twenty-two (22) minutes

20

GUILD00057.0020

during a shift shall be compensated at the overtime rate. An employee who works a scheduled four (4) day work week shall be treated on the same basis as an employee working a five (5) day work week for benefit purposes. An employee working a scheduled four (4) day work week shall be credited with working 1.25 shifts per day for benefit purposes, except that such employee shall not be entitled to any greater benefits than an employee working a five (5) day work schedule.

2. Employees working a full shift will be allowed two rest periods per shift, not to exceed fifteen minutes each. Subject to operational requirement as determined by the supervisor, one rest period will be taken during the first half of the employee's shift and the second rest period will be taken during the second half of the employees shift.

3. The Company shall have the exclusive right to establish new shifts in addition to the shifts in effect at the time this Agreement was executed and to assign employees covered by the Agreement to any shift.

4. Work schedules may be changed to assure sufficient staffing or when necessary to replace an employee absent due to sickness, personal emergency or any other form of leave of absence upon one week's notice to the employee being changed. Work schedules where normal operating conditions require variability, shall be posted at least 72 hours in advance; provided, that all regularly scheduled work on Sundays and holidays shall be posted at least one week in advance. Starting times may be changed by the Employer for legitimate business needs with not less than twenty-four (24) hours notice or in the event of illness or emergencies. Change in work schedules may also be made at any time upon mutual agreement between the Employee and Employer.

5. Provisions of Sections 1 of this Article VII, shall not apply to employees assigned to established bureaus outside of the St. Louis Metropolitan Statistical Area, political conventions, campaign or speaking tours, training camps, playing trips of athletic teams, foreign duty. These employees may be awarded additional vacation time with pay as a reward for protracted effort.

6. Provisions of Section 1 of this Article VII, shall not apply to Circulation district representatives regularly assigned outside of the Newspaper Designated Market as defined by the Audit Bureaus of Circulations, but these employees shall be paid at the rate of time and one-half their straight time rate for all work beyond 37 hours and 30 minutes in any week.

GUILD00057.0021

7. Compensation for travel time shall be pursuant to Employer policy as modified from time to time but in no event less than the requirements set forth in the Fair Labor Standards Act.

8. An employee eligible for overtime under Article VII called back to work when an interval has elapsed after his/her regular working day shall be paid an extra hour in addition to the time worked. All pay under this section shall be at the overtime rate of time and one-half.

9. Each employee covered by this Agreement shall work overtime when asked, unless excused by the Company. No overtime shall be worked by any employee unless it is authorized by the Company.

10. Overtime or premium pay shall be paid only for actual time worked.

11. There shall be no pyramiding or duplication of overtime or premium pay, and it is agreed and understood that no employee shall be paid overtime or premium pay more than once for the same hours worked.

12. Sick leave and vacation days shall be considered as time worked for purposes of computing overtime.

13. Overtime hours will not be counted for purposes of accruing hours or credits under any Company benefit plan unless the benefit plan specifically provides for such coverage.

14. Employees designated by the Company as full time Columnists and who are paid overscale shall not be entitled to overtime pay.

15. Outside Sales persons shall not be entitled to overtime pay. It is the intention of the Company that outside sales persons not be required to work excessive overtime, including weekends, except in the event sales requirement dictate otherwise. Therefore, the Company and the Union have agreed on the following statement. Any outside sales person who believes that he or she is required to bear a disproportionate amount of overtime work is encouraged to voice complaints to both his or her supervisor and the Human Resources Department. Upon notification of an employee's concern, the Director of Industrial Relations shall convene a meeting of the employee, the employee's supervisor and a Guild representative in an effort to resolve the workload issues which may exist. If it is determined by the parties that the excessive overtime was not warranted by the particular requirements of the job existing at the time, the parties shall agree upon a remedy for the employee. Outside sale persons shall not be assigned excessive overtime or be called in

22

GUILD00057.0022

on weekends as a disciplinary measure. The Company will continue to work with employees who need to be excused from time to time from overtime due to personal reasons. (See Side Letter dated June 1, 2004 from Company.)

Outside Sales persons shall receive compensation of 20% of their average earnings, not to exceed $175.00, in the event an employee is required by the employer to work a Saturday or Sunday (Weekend). It is further understood that such compensation will not include customer entertainment and hours worked in connection with daily job duties.

16. Any employee whose regular days off are not consecutive shall be entitled to five weeks, within each calendar year, in which his/her days off shall be consecutive; provided that the scheduling of such weeks shall be arranged at least two weeks in advance and by mutual agreement between the employee and his/her supervisor and the scheduling of such days off does not interfere with the efficient operation of the Employer.

17. An employee who is required to come into work on his/her day off, or on a Sunday or holiday, when not regularly scheduled to work on that day, shall receive a minimum of one-half days pay at the rate of time and one-half when the employee agrees to work a half shift or less or a full day's pay at the rate of time and one-half when required to work more than one-half day, unless otherwise mutually agreed between the employee and employer.

ARTICLE VIII - HOLIDAYS

1. The following shall be considered holidays: New Year's Day, Memorial Day, Independence Day, Labor Day, Thanksgiving Day and Christmas or days legally observed as such.

2. An employee required to work on any holiday, shall receive compensation of a normal day or nights pay at the overtime rate, plus a day or nights pay at the straight time rate for the holiday, except as otherwise provided in Sections 14, 15 and 17 of Article VII or Article XVII.

3. When a holiday falls on an employee's regular day off, the employee shall receive a compensating day off on any date which is mutually agreeable between the employee and his/her supervisor.

4. When an employee's vacation time includes a holiday, or day observed as such, an extra day shall be added to the employee's vacation.

5. To be eligible for holiday pay, an employee must work his or her last scheduled workday before the holiday and first scheduled workday after the holiday unless excused by reason of a

23

GUILD00057.0023

paid sick day.

6. In addition to the six holidays named in Section 1 of this Article VIII, employees shall be granted a leave of absence with pay for one shift at their regular rate of pay on their birthday. If the granting of the leave on the date of the employee's birthday is not practicable in the judgement of his/her supervisor, the employee shall have his/her choice of another date that is mutually agreeable to the employee and his/her supervisor. Should the employee's birthday fall on a holiday or during his/her vacation period or on a regularly scheduled day off, he/she shall receive a mutually agreeable compensating day off within 15 days either side of his/her birthday date.

7. Employees with at least one year of service with the Employer shall be entitled to three (3) "Personal" holidays (three days at full straight time pay) in each calendar year, which may be taken on any date which is mutually agreeable between the employee and his/her supervisor.

## ARTICLE IX - VACATIONS

1. Employees shall receive annual vacations with full pay according to the following schedule: One week's vacation after six months of employment; one additional week's vacation after one year's employment; three weeks' vacation after two years' employment; four weeks' vacation after five years' employment; five weeks' vacation after twenty years' employment; in each case employment meaning continuous employment. Vacations shall be scheduled by the calendar year, unless deferred with the explicit consent of the Employer. Vacation schedules shall be posted; the Employer recognizes an obligation to see that employees receive vacations. Determination of eligibility for vacations shall be based on the anniversary of the individual's last employment by the Employer. If such anniversary occurs so late in a calendar year that the vacation or part thereof, cannot be taken in that year, the time due shall be allowed at mutual convenience in the ensuing year.

2. In the event of termination of employment, an employee shall receive accrued vacation pay at the rate of one and one-half days for each month of service following the last previous anniversary date of employment in that year if he/she has had more than six months but less than five years of service; or two days for each such month if he/she has had five years or more of service; provided, that no employee in these service brackets shall receive accrued vacation pay in excess of what he/she would otherwise be entitled to under Section 1 of this Article IX after taking into account any vacation already received in the calendar year of termination; and provided that an employee terminating with less than six months of service shall receive accrued vacation pay at the rate of one day per

24

GUILD00057.0024

month of service but not more than five days. There shall be no loss of vacation credits on termination due to authorized delay in a vacation under provisions of Section 1 above or due to not having had all or part of a vacation prior to termination in the calendar year of termination.

3. Vacation Pay for a part-time employee shall be determined in proportion to the average straight-time worked by the Employee weekly in the 52 week period preceding by four weeks the start of his/her vacation or such part-time of the 52 week period in which he/she has been employed by the Employer. Where an employee's status has changed from full-time to part-time service, or from part-time to full-time, within the foregoing base period of 52 weeks or part thereof, straight-time worked under each category shall be counted proportionately in the determination.

4. The Employer reserves the exclusive right to schedule vacations and to generally administer vacation selection to assure efficient and orderly operation of the departments. The employer shall post schedules of available vacation time no later than December 1 for the following calendar year. Employees will be allowed to select vacation in order of seniority prior to deadlines established by the department but in no case shall the deadline be before February 15 of the year in which the vacation is to be taken. When two or more employees seek the same vacation period and operating needs and efficiency do not permit all such employees to take such vacation period, it shall be granted on the basis of seniority provided the remaining employees have the requisite skills necessary to run the department and provided further that the employees have made their vacation selection by the deadline established by the employer for making vacation selections. Vacation requests made after the deadline shall not be subject to seniority and shall be granted through mutual agreement between the employee and employer.

5. Employees may be called back to work during vacation only in case of emergency for reasonable cause. An Employee called back shall have the choice as to each day affected: (a) of giving up one day of vacation and receiving a day's pay at the overtime rate of time and one-half, or (b) taking a one-day extension of his/her vacation and one-half of a day's pay at the straight-time rate, such pay in either case being in addition to vacation pay. Appropriate adjustment of travel time as part of the call-back period shall be made if the employee elects to return to vacation. If necessary travel expense is incurred in addition to what the employee would have spent for return from vacation, the Employer shall bear such added expense.

25

GUILD00057.0025

## ARTICLE X - SICK LEAVE

1. Effective with the signing of this Agreement, paid sick leave shall be paid in accordance with the following procedures:

Employees with less than six (6) months' service with the Employer shall not be entitled to paid sick leave.

Employees with less than one (1) years' service, but more than six (6) months' service with the Employer shall be eligible for a maximum of one (1) shift of paid sick leave.

Employees with more than one (1) years' service with the Employer, but less than two (2) years' service shall be eligible for a maximum of four (4) shifts paid sick leave in addition to the above one (1) shift, provided that the one (1) shift has not been used.

Employees with more than two (2) years' service with the Employer, but less than three (3) years' service shall be eligible for a maximum of five (5) shifts paid sick leave, plus the five (5) shifts above, provided the five (5) shifts have not been used.

Thereafter, the employee is to acquire ten (10) shifts of paid sick leave per year until such time they have accrued sixty (60) shifts of sick leave. However, it is agreed that during the term of this Agreement those employees who had accrued 60 or more shifts of sick leave prior to December 12, 1994, shall not accrue any additional sick leave until the first full service year following the year that the number of their unused sick shifts fall below 60, at which time they shall start acquiring a maximum of ten (10) shifts per year until they have accrued the limit of sixty (60) shifts.

2. All new employees must submit to and pass a medical examination by a physician designated by the Employer in order to be entitled to paid sick leave as provided for herein, and all medical expenses for such examination shall be paid by the Employer. Such examination shall be made and reported prior to starting employment. The Employer may waive the requirement for such examination as to persons hired under the provisions of Article XVII of this Agreement, but in the case of temporary employees made regular employees or part-time employees made full-time employees may require such employees to submit to and pass such examination as a condition of such change in status in order to be entitled to paid sick leave; provided, that a second examination shall not be required in the case of an employee previously examined. The cost of such examination shall be borne by the Employer.

26

GUILD00057.0026

3. If a person whose medical examination has disclosed serious and major health deficiencies is employed, he/she shall not be eligible for the paid sick leave provided for herein unless at a later date examination by the Employer's physician at the Employer's expense shows the serious and major health deficiencies to have been corrected by surgery or treatment. However, any such person may sign a waiver, prior to employment on a form provided by the Employer, agreeing that he/she shall not be eligible for paid sick leave in case of illness due to such health deficiencies or demonstrably connected therewith, and if he/she signs such waiver he/she shall be eligible for paid sick leave as to any other health deficiency covered herein not waived and not related to a waived health deficiency. In the event that there shall have been no occurrence of absenteeism due to a waived health deficiency during the first three years of employment by the Employer, such waiver shall be eliminated automatically on termination of the three year period. Such waiver may be eliminated at any time upon a satisfactory medical showing of correction of the deficiency covered by it.

4. To be eligible for paid sick leave an employee must promptly notify the appropriate supervisor when sickness or accident begins. He/she shall give full and complete information as to the cause and nature of the sickness or accident. Additionally, the Employer may require, at its discretion, authentication of an employee's sickness or accident by way of a Doctor's certificate or other medical proof provided by the employee at his/her expense. While on sick leave an employee may be required to submit to medical examination from time to time by a physician designated by the Employer, at the Employer's expense. When an employee is on extended paid or unpaid sick leave, he/she shall be responsible for providing current medical documentation to the Employer, upon request. Failure or refusal of an employee to submit to such examination or to give proper information regarding his/her condition, as required herein, shall cancel immediately his/her right to paid sick leave and may subject an employee to discipline, including discharge.

## ARTICLE XI - LEAVES OF ABSENCE

1. A leave of absence without pay requested by an employee for personal reasons may be granted by the Employer in its judgment, and no such leave of absence granted in one case shall constitute a precedent binding upon the Employer in any other case. Applications for leave of absence shall be in writing.

2. Unpaid maternity leave of six months will be granted on request after one year's employment. An employee planning on applying for maternity leave shall give the Employer at least four weeks written notice prior to going on disability as to

27

GUILD00057.0027

their planned unpaid maternity leave of absence. Once submitted to the Employer, the planned absence may not be changed without consent of the Employer. An employee on maternity leave shall give the Employer written notice at least two weeks before the expiration of such leave as to whether she intends to return to work or resign. An employee desiring to return to work before the expiration of maternity leave shall give the Employer written notice at least two weeks in advance of the date on which she desires to return. The Employer shall have the sole and exclusive right to decide if the employee will be allowed to return to work earlier than the planned return to work date. The terms of the April 2004 Draft Company policy on paid maternity leave, paternity leave, adoption assistance shall be made available to eligible bargaining unit employees for the term of this Agreement. (Policy Attached)

3. Leaves of absence upon request shall be granted to employees elected or appointed delegates to conventions of the Newspaper Guild, AFL-CIO or any organization with which the Newspaper Guild is affiliated.

4. Leaves provided for in this Article XI shall not constitute breaks in continuity of service in the computation of dismissal pay, vacations and other benefits under this Agreement, but time spent on such a leave or leaves shall be excluded in computing dismissal pay, accrued vacation pay, personal days or progression of a part-time or full-time employee in the wage scale; provided, that an employee returning from leave hereunder shall not be eligible for vacation in the calendar year of return if he/she had a vacation or received accrued vacation pay in such year nor shall he/she be eligible for vacation in the year of return unless he/she works for the Employer at least six months in said year.

5. Employees on approved leave of absence shall have the opportunity to receive continued medical and/or group life insurance coverage, provided that the employee on approved leave of absence exceeding thirty (30) days, shall pay the full cost of medical and/or group life insurance coverage. Failure to pay the full cost when due shall be grounds for discontinuation of medical and/or group life insurance coverage.

6. When a member of the immediate family of an employee dies, upon notice to the Employer, the employee shall be permitted to absent himself/herself from work without loss of pay for three consecutive days, the second day being the day of the funeral. He/she shall be reimbursed for each of these three days if they are his/her regular scheduled days to work, but he/she shall not receive any funeral leave pay for any of these days which fall on a day he/she is not scheduled to work or if he/she is away on sick leave or vacation, or otherwise not scheduled to work. The term "immediate family" shall include and be limited

GUILD00057.0028

to spouse, certified domestic partner, children, parents, brothers, sisters, and stepchildren. Any additional funeral leave granted by the Employer, in its discretion, shall be on a case-by-case basis. Additional funeral leave granted by the Employer in one case shall not constitute a precedent binding upon the Employer in any other case.

## ARTICLE XII - EXPENSES: AUTOMOBILE USE

1. The Employer shall pay all approved and reasonable expenses incurred by an employee in the service of the Employer. The employee shall provide a reasonable account of expenses, supported by receipts or vouchers when such are normally issued, on a standard form provided by the Employer.

2. The Employer will provide an automobile with air conditioning for each bargaining unit photographer, for use on duty and for travel to and from work, unless a photographer prefers to use his/her own automobile. When the Employer leases an automobile for a photographer under the foregoing provision, such photographer shall not substitute use of his/her own automobiles for the period of such lease. If a photographer makes his/her personal automobile regularly available for use at the authorization of the Employer he/she shall be entitled to receive mileage reimbursement in accordance with Article XII Section 3

The provisions of this Section 2 shall not apply to photographers who on a regular basis use an automobile on outside assignments less than three days a week, but such employees shall be compensated in accordance with Section 4 of this Article XII.

3. Advertising Outside Sales employees required by the Employer to make their automobiles regularly available for use at the authorization of the Employer shall receive a minimum allowance of $49.70 per week, plus 41 cents for each mile traveled over 120 on assignment in each week. Weekly guarantees under this section shall be paid continuously during the period for which an employee is required for such use unless he/she is on sick leave, leave of absence or vacation.

Advertising Outside Sales employees authorized by the employer to receive a minimum allowance shall remain so designated for a period of at least six months. If the Employer desires to withdraw such designation at the end of such period, the employee shall be notified in writing at least 30 days prior to the date such designation is to end. By mutual agreement between the Employer and the Guild, the provisions of this Section 3 may be waived in the case of an employee being given a tryout under the provisions of Section 4 of Article VI of this Agreement, or to an employee who is temporarily assigned to the duties of another employee who is ill, on vacation or leave of

29

GUILD00057.0029

absence, unless the employee who is being tried out or temporarily assigned is covered by the provisions of this Section 3 by virtue of his/her regular classification.

4. Other employees who are required to use their cars in the service of the Employer, when authorized to do so, shall receive 41 cents for each mile in such service.

5. The Employer agrees that for the term of this agreement the cents per mile figure in Sections 3 and 4, shall in no event be less than the Internal Revenue Service standard mileage rate or 41 cents, whichever is greater.

6. Employees are to operate motor vehicles in a safe manner. Driving on Employer business while under the influence of alcohol or drugs or otherwise in violation of the Employer's Substance Abuse Program is strictly prohibited. Employees are to be physically and mentally capable when using a motor vehicle for Employer business.

7. The sole purpose of an Employer vehicle is for employee use on Employer business. Employer vehicles are not to be used for vacations or any other personal use.

8. An employee designated by the Employer to drive an Employer owned vehicle must report to the designated department supervisor any unsafe conditions of the vehicle that become known to the employee. Said employee is responsible for maintaining the vehicle in a safe operating condition at all times. Employees should forward vehicle inspection and maintenance records to the designated Employer representative.

9. All employees who drive in the performance of their duties are expected to maintain automobile insurance coverage for bodily injury and property damage in accordance with Employer policy as modified from time to time by the Employer. It is the responsibility of the employee to maintain the designated level of insurance coverage, provide the current certificate of insurance each six (6) month period coincident with the employee's insurance renewal dates and sign a request for reimbursement form acknowledging his/her responsibility to maintain the minimum insurance requirements. In turn, the Employer agrees to authorize payment of $5.00 for each month of coverage upon receipt of the current certificate of insurance and request for reimbursement form. The Employer will make reasonable effort to make said payment within the next payroll period. Payments will be made no more than twice each twelve month period.

10. All employees who regularly drive in the performance of their duties shall furnish to the Employer their valid driver's identification number in order that periodic vehicle record

30

GUILD00057.0030

checks can be made every six (6) months. Results of such checks will be considered confidential, but will be made known to the Business Manager of the St. Louis Newspaper Guild and the affected employee should the driving record require suspension from driving on Employer business.

Upon notification to the affected employee, the Employer may transfer such employee to a non-driving position within his/her job classification.

11. Seat belts shall be worn at all times by employees driving on Employer business. Employees shall require any occupants in the automobile to wear seat belts.

12. It is recognized by both parties that cooperation in vehicle usage requirements will be beneficial to the safety of the employees and reduce accidents. Any willful failure to abide by the provisions of this Article will be considered a violation of the provisions of the collective bargaining Agreement.

### ARTICLE XIII - MILITARY AND GOVERNMENT SERVICE

1. Any employee who has left or leaves the employment of the Employer in order to serve with the armed forces of the United States Government; or the National Guard; or civilian services of the United States Government or of any state, directly connected with the defense of the nation; or other civilian services in time of national emergency, for work connected with defense of the nation; or who shall be compelled by government to accept other employment, shall be considered an employee on leave of absence. Any such employee upon release from such service, unless dishonorably discharged therefrom, shall be restored immediately to the post formerly held by him/her or to a comparable post at the termination of his/her leave of absence, with dismissal pay rating and other rights under this contract unimpaired. Such restoration shall be at the basic salary that would have been applicable to such individual employee under normal operation of the general progression schedule and under any general changes in pay, if his/her employment had not been interrupted by such leave of absence. Employees returning to the Employer's employ shall endeavor to give advance notice as to the date of their return, but they shall not be required to give such advance notice.

2. Time spent in such service shall be considered service time with the Employer in computing dismissal pay, experience rating, length of vacations, and all other benefits under this Agreement which depend in whole or part upon the length of service with the Employer; provided, that an employee, returning from such service shall not be eligible for vacation in the calendar year of return if he/she has had a vacation or received accrued vacation pay in such year nor shall he/she be eligible

GUILD00057.0031

for vacation pay in such year nor shall he/she be eligible for vacation in the year of return unless he/she works for the Employer at least six months in said year.

3. An employee leaving for such service shall receive four weeks' pay; provided, that such pay shall not be given more than once for an employee serving under the Reserve Forces Act of 1955. An employee leaving for such service shall receive any accrued vacation pay that may be due, computed as for termination under Section 2 of Article IX of this Agreement. Any such employee carrying group life insurance may retain such insurance and if he/she does the Employer shall pay all premiums thereon during such leave of absence.

4. Any such leave of absence shall terminate 90 days after the employee has received his/her discharge from such service. Additional leave may be had by arrangement between the Employer and the Guild.

5. If any employee upon his/her return from such leave of absence found to be physically incapacitated as the result of service with the armed forces of the United States Government, or the National Guard, to the extent that he/she is unable to resume his/her former employment, the Employer shall make reasonable efforts to place him/her, in other mutually acceptable suitable employment, and shall consult with the Guild thereon. Such other employment shall be at the prevailing salary for its classification at the employee's experience level. If such other employment is not found the employee's service with the Employer shall thereupon be terminated, and he/she shall receive dismissal pay at the rate specified elsewhere in this Agreement.

6. Any employee assigned to take the place of an employee away on such leave of absence may, on the reinstatement of the latter be returned to his/her previous position, or a comparable one, at a salary no less than what he/she would have received if his/her service in his/her former classification had been continuous. Any employee so assigned, and while such assignment is temporary shall continue to accumulate experience credit under his/her former classification. In the event an employee so assigned is transferred to the new classification he/she shall receive full experience credit in this classification for the period in which he/she actually has been engaged in it.

7. An employee hired as a replacement for one entering on such leave of absence shall be covered by all provisions of this Agreement, except Sections 1, 2, 3, 4, 5 and 6 of Article XIII. Any such replacement employee, on entering service covered by Section 1 of this Article, shall be given accrued Vacation Pay.

8. An employee hired or assigned as replacement of an employee entering service covered by Section 1 of this Article

GUILD00057.0032

XIII shall be given written notice to that effect at the time of such employment or assignment, stating which employee he/she is replacing, and a copy of such notice shall be sent to the Guild.

9. Military replacement employees shall be given regular positions when vacancies occur which they may suitably fill, provided they are competent and qualified for such regular employment. Preference for regular positions shall be given military replacement employees according to seniority in last continuous service with the Employer as related to that of other qualified employees seeking such positions before new employees are employed for such positions. When a replacement employee is given the status of regular employees he/she and the Guild shall be notified in writing. Every effort shall be made to retain replacement employees, in accordance with the Employer's statement of policy.

10. An employee who is called away from his/her duties for training in the reserves of the armed forces of the United States or in the National Guard shall be granted a leave of absence for the period of such training. During the period of such training, but for not more than four weeks in any calendar year, the Employer shall pay any difference between the employee's regular salary and the amount he/she receives from the armed forces or the National Guard during the training period if such amount is less than his/her regular salary. However, Section 1 of this Article XIII shall apply in the case of an employee who is a member of the reserves of the armed forces of the United States or the National Guard and who is called to active duty therein.

ARTICLE XIV - SECURITY

1. Except as otherwise provided for in this agreement, the Employer shall have the right to dismiss employees to reduce the force.

2. The Employer shall notify the Guild in writing of the intent to dismiss employees to reduce the force, stating the number, classifications and department of jobs affected. Dismissals, to the extent required after any such resignations, shall be made in inverse order of seniority within each classification within the affected department except as hereinafter provided. Such dismissals shall be made effective two weeks after the date of the notice provided for in this Section 2 and upon at least one weeks' notice to the employees to be dismissed. At the Employer's option, employees dismissed hereunder may not be required to work through the notice period and shall be paid for such period.

For the purposes of this Article XIV, seniority shall be determined on the basis of the last continuous employment by the Employer regardless of any change in classification; departments

33

GUILD00057.0033

shall mean the departments listed in the Preamble of this Agreement; and classifications shall mean the job titles listed in the schedules of wage minimums in Section 6 of Article V of this Agreement; provided nevertheless as follows: (a) employees in Schedule A, whose services are individually of major importance to the Employer shall not be dismissed because of low seniority; (b) if jobs in a given classification exist in more than one department, this Section 2 shall apply separately as between the various departments of the Employer; (c) a vacancy thus created in a given classification in one department resulting from application of this Section 2 may be filled in the Employer's discretion by the remaining employee next in order of inverse seniority in the same classification in any department of the newspaper, without application of the provisions of Section 6 of this Article XIV.

An employee named for dismissal to reduce the force who has been promoted from a lower classification within the previous 6 months, may return to his/her previous classification at his/her request if there is an employee in that classification with less seniority, displacing the employee with the least seniority within that classification, who shall have the same rights as the employee originally named for dismissal except that of displacing another employee.

3. As an alternative to dismissal under Section 2 of this Article XIV, and where a vacancy or new job opening exists in some other classification or department which the Employer decides to fill, upon request of the employee, the employee will be offered the opportunity to transfer to that vacancy provided he/she is deemed qualified and competent by the Employer therefore. Job openings will be made available through the Employer's Human Resources Department. If so transferred, he/she shall be paid not less than the pertinent minimum scale for the job to which transferred, other provisions of this Agreement notwithstanding. He/she shall be subject to the provisions of Section 4 below except as they are inconsistent with his/her continuing status as an employee.

4. There shall be established a list of persons who were either dismissed under the provisions of Section 2, or transferred to a lower classification under the provisions of Section 3 of this Article XIV. No person shall be rehired under the provisions of this Section 4 unless they are qualified for the job and available to accept it within one week of the time the Employer desires it to be filled but this period may be extended by agreement between the Employer and the Guild; conditions existing in the previous employment which did not then disqualify the employee shall not be a bar to qualification on rehire.

It shall be the obligation of the employee to keep the

GUILD00057.0034

employer informed of their current address and phone number and to regularly remain in contact with the Human Resources Department regarding job openings. It shall be the obligation of the Employer to maintain updated information on available positions through the Employer's Job Hotline and On-line and in the office of the HR Department. No person shall be rehired under the provisions of this section unless then qualified for the job and available to accept it within two (2) weeks of the time the Employer desires it to be filled; conditions existing in the previous employment which did not then disqualify the employee shall not be a bar to qualification on rehire. In the event of a vacancy or a new job opening in the classification last held by such person, or in a lower classification for which he/she is qualified, it shall be the responsibility of the employee to contact the Employer and request to be offered the job in the order of his/her seniority, as defined above, in the classification of such job, during the posting period. An employee refusing to accept an offer of rehire for regular employment shall be removed from the list. Regular employment in this connection shall mean other than the types covered by Sections 2 and 3 of Article XVII of this Agreement and failure to rehire for such types of work shall not be deemed to violate this Section 4.

In no case shall the Employer be required to rehire under the provisions of this Section 4 a person who has been on the list more than eighteen (18) months, but this shall not preclude rehire thereafter at the Employer's discretion.

An employee rehired or transferred under these provisions shall be paid at the pertinent minimum for the job to be filled and, while a dismissal under the provisions of Section 2 above shall constitute a break in employment, except as hereinafter provided, the seniority of a person so rehired shall resume and run from the date of his/her last previous hire. He/she shall have the same vacation and sick leave rights and such other benefits as he/she would have had if his/her employment had been continuous, except that time spent on the list shall not be considered employment or working time with the Publisher. When an employee is rehired in the same classification from which he/she was previously dismissed, any previous pay differential above minimum shall be restored two weeks after such rehire. While such a person on the list shall not be considered an employee, it is recognized that the Guild shall represent him/her as to the provisions of this Section.

Such a person upon rehire may refund to the Employer dismissal pay received under Section 2 above but shall not be required to do so; in event of such refund, but not otherwise, such person would be eligible in event of subsequent dismissal for dismissal pay on the combined basis of the new period and the last preceding period of employment by the Employer (unless

35

disqualified for cause); if the new period of employment is at a different pay rate than the last preceding period, the new level of dismissal pay would be at the final rate of the last preceding period and the final rate of the new period as to the respective length of service in each period.

If a person on the list should be rehired by the Employer in a classification lower than he/she had held immediately before going on the list, he/she shall remain on the list as to a future opening in his/her former classification.

5. There shall be no discrimination against any employee by the Employer or the Guild because of race, creed, sex, age, color, disability, marital status or membership or non-membership in the union regarding an employee's wages, hours and working conditions.

6. No employee shall be transferred on a regular basis to another city outside of the metropolitan area without his/her consent. The Employer shall pay all reasonable moving expenses resulting from a transfer to another city outside of the metropolitan area. There shall be no reduction in pay or other benefits because of a transfer except as otherwise provided in this Article XIV.

7. New employees shall be on probation for the first nine months of their employment and may be discharged with or without cause by the Employer at any time during the probationary period and such discharge will not be subject to the grievance and arbitration procedure. Probationary employees shall have the right to discuss their progress with their supervisors at reasonable times during their probationary period.

8. The Employer shall not be required to maintain the employment of any person who for any reason has been absent from work for a period of eighteen (18) months or more consecutive months.

## ARTICLE XV - DISMISSAL PAY

1. In the event of dismissal of an employee, except for just cause, dismissal pay shall be paid at the rate of one week for each year of last continuous employment by the Employer, to a maximum of 26 weeks in dismissal pay for employees hired on or after December 1, 1994. Dismissal pay shall be paid at the rate of one week for each six months of last continuous employment by the Employer, to a maximum of 66 weeks in dismissal pay, for employees hired prior to December 1, 1994.

2. Dismissal pay shall not be paid to an employee discharged for just cause.

GUILD00057.0036

3. Dismissal pay shall be based on the highest wage received by an employee during the 12 months preceding dismissal; or, in the case of a commission or base plus commission employee, it shall be based on the average commission or base plus commission for the 12 months preceding dismissal.

4. All dismissal pay shall be paid in a lump sum except as hereinafter provided. From such dismissal pay the Employer may deduct any tax or levy which the law requires shall be deducted from the employee's pay.

## ARTICLE XVI - EMPLOYEE WELFARE

1. For the term of this Agreement, the Employer shall provide eligible bargaining unit employees (upon application) basic employee and retiree health, dental insurance and pre-tax deductions of health care and dental premiums as well as the opportunity to participate in the company pre-tax spending account plan program on the same basis and to the same extent as offered to St. Louis Post-Dispatch LLC Administrative/Supervisory employees. It is understood that Post-Dispatch LLC Administrative/Supervisory employees and retirees do not include senior management and department heads. The Employer reserves the sole and exclusive right to modify or replace the Employer's basic Health and Dental insurance including, but not limited to, plan design, co-pays, deductibles, eligibilities, etc. The Employer may offer benefits through commercial insurance carriers, on a self-insured funding basis or on a basis employing any combination of commercial insurance or self-insured funding.

Notwithstanding anything to the contrary in the foregoing paragraph of Section 1, on the first of the month following the effective date of this Agreement and thereafter, employee premium costs for all health and dental insurance plan coverage shall be shared for the term of this agreement as follows:

### Effective July 1, 2004

| | Cost Sharing | |
| --- | --- | --- |
| | Employer | Employee |
| All Eligible Full-time Employees | 85% | 15% |

### Effective July 1, 2005

| | Cost Sharing | |
| --- | --- | --- |
| | Employer | Employee |
| All Eligible Full-time Schedule A & B Employees | 75% | 25% |
| All Eligible Full-time Schedule C - M | 80% | 20% |

37

GUILD00057.0037

**Effective July 1, 2006 and Thereafter**

| | Cost Sharing | |
|---|---|---|
| | Employer | Employee |
| All Eligible Full-time Employees | 75% | 25% |

It is agreed that there shall be a cap of 13.5% on any annual increase in healthcare premiums for purposes of determining employee cost sharing. For example if the employee's premium contribution rate is twenty-five (25%), any yearly increase in the 25% rate will not be increased by more than 13.5 percentage points.

It is agreed that eligible bargaining unit employees will continue to have access to the PPO medical plan made available under the 1994 collective bargaining agreement for as long as the Company retains that medical plan with the understanding that the 13.5% cap on annual increase in premiums shall not apply and the program shall not be available to retirees.

There shall be no duplication of coverage in the case of an employee and spouse or employee and significant other both being employed by the Employer. In such case, there can be one (1) family coverage or two (2) single coverages.

The Employer agrees to provide for the term of this Agreement on retirement under the terms of the Joseph Pulitzer Pension Plan, for each employee covered by this Agreement having ten (10) years or more of continuous service as an employee with the Employer immediately preceding the date of retirement, the group medical insurance benefits provided for in this Article for the retiree only, paid for by the Employer for the retiree's lifetime only. It is understood employees retiring under the terms and conditions of this Agreement shall receive no less than the same Medicare Part "B" reimbursement as administrative retirees or $24.80/month whichever is higher.

Part-time employees covered by this Agreement shall (upon application) be entitled to all benefits provided in this Section 1 and share in the premium cost of said benefits in proportion to time worked as provided in Article XVII of this Agreement.

2.    The Employer shall provide $50,000 insurance protection for all employees assigned to airplane flights, provided that no employee shall be assigned over his/her objection to any flight.

3.    The Employer agrees to provide (upon application) for each present and future employee covered by the Agreement, having six months or more of continuous service with the Employer, group

38

GUILD00057.0038

life insurance coverage in the amount of $10,000, and the Employer agrees to pay the full premium of said coverage of each employee for as long as the employee continues in the service of the Employer.

The Employer agrees to provide, on retirement, under the terms of the Joseph Pulitzer Pension Plan, for each employee covered by this Agreement, having 10 years or more of service with the Employer, immediately preceding date of retirement, group life insurance coverage in the amount of $10,000 and the Employer agrees to pay the full premium for said coverage for the remainder of the retiree's life. The Employer may offer individual monetary incentives at its discretion to retirees, where applicable in lieu of life insurance coverage under the Employer-sponsored plans.

4. If the Employer intends to subrogate any insurance claim settlement offered a Guild-covered employee, the employee and the Guild are to be notified, in writing, by certified mail.

5. Regular employees of the St. Louis Post-Dispatch will be eligible to become participants in the Pulitzer Retirement Savings Plan. The Employer contribution to the Pulitzer Retirement Savings Plan will be a maximum of $50.00 per month for each such Plan participant. The Company reserves the exclusive right to modify the terms of the Pulitzer Retirement Savings Plan during the term of this Agreement.

6. The Employer agrees to conform to all federal and state laws and binding regulations regarding maintaining safe working conditions for employees covered by this Agreement.

### ARTICLE XVII - PART-TIME AND TEMPORARY EMPLOYEES

1. A regular part-time employee is one who is hired to work regularly less hours weekly than the full-time hours set out in Sections 1 and 2 of Article VII of this Agreement. Such part-time employees shall not be employed for less than three hours and 45 minutes per shift. Regular part-time employees shall receive all benefits of this Agreement in proportion to time worked, except as hereinafter specified in this Section 1. They shall receive an annual step-up of pay after working 1950 hours in their wage classification until they have reached the top minimum. They shall have holidays with pay only as a holiday falls on a regularly assigned working day of the individual but they shall be paid at the overtime rate if required to work on a holiday. They shall not have compensating days for holidays except where a holiday occurs in a scheduled vacation and falls on a day when the individual otherwise would be regularly assigned to work. A part-time employee not having regularly assigned working days shall have holidays with pay in proportion to the number of times during the 52 weeks preceding a holiday

the employee has worked on that day of the week and in proportion to the average straight-time hours worked on such day. Such employees shall not have compensating days for holidays.

2. The Employer shall continue to have the right to hire temporary employees (i.e. any employee hired only for a specific function or for a fixed period of time not to exceed six (6) consecutive months or any employee hired to fill the place of an employee on leave of absence under this Agreement) to perform duties and responsibilities of the type normally performed by bargaining unit employees. Temporary employees shall receive no benefits or seniority rights under this Agreement but shall receive the minimum pay for the classification. Temporary employees may be terminated by the Company in its sole discretion and without recourse to the grievance and arbitration procedure.

3. An employee hired to fill the place of an employee who has transferred to another classification and is on tryout under Section 4 of Article VI of this Agreement shall be covered by all provisions of the Agreement except that his/her employment may be terminated during their probationary period in accordance with Section 7 of Article XIV or upon the return of the employee for whom he/she was a replacement (unless in the meantime he/she has been made a regular employee).

A continued and uninterrupted period of temporary employment under this Article XVII immediately preceding regular employment shall be fully credited in determining vacation, experience rating or dismissal pay not withstanding any provision to the contrary in this Agreement.

ARTICLE XVIII - MISCELLANEOUS

1. Through its Human Resources Department, the Employer shall make reasonable effort to inform employees, where qualified and in departments where apropos, of new positions or vacancies which offer opportunity for advancement. The Employer recognizes in principle the desirability of promoting qualified employees when opportunity occurs, and expresses willingness to consider reasonable requests for promotion to vacancies or new positions. Nothing herein shall abridge or restrict the Company's exclusive right to fill any vacancy or new position from outside the bargaining unit.

2. Bulletin boards for the exclusive use of the Guild shall be provided in each department in the Guild's jurisdiction. Use of such boards shall be limited to Guild business matters and notices of Guild meetings.

3. Whenever the Employer sells for profit for outside use, photographs (in conventional or electronic format) taken by

GUILD00057.0040

photographers employed by the Employer, fifty (50) percent of the proceeds, as determined by the Employer, from the sale of the photographs shall be divided equally among the bargaining unit employees in the photo department who have been employed for the entire year at the time the accounting is completed. Employees in the photo department who have not been employed for the full year but are employed at the time of accounting shall receive a prorated share based on 1/12 share for each full calendar month they were employed during the year. The parties agree that the provisions of this Section shall only apply to the sale of individual photographs and does not apply to the Employer's electronic dissemination of photographs to other services, providers of news or new sources or the sale of company products that also contain photographs.

4. Employees will be subject to the employer's ethics and professional integrity policies as established and changed by the employer in its sole discretion from time to time.

Employees may not engage in activities outside their working hours which create a real or potential conflict of interest or which are in competition with the newspaper. The Company agrees that limitations on free-lancing or other outside commercial activities shall be narrowly drawn and shall not be arbitrary. The Company shall meet with the Guild before putting any such policies into effect.

5. Employees called on jury duty shall not absent themselves from the service of the Employer longer than reasonably necessary. An employee who has regularly scheduled working hours between 6 p.m. and 6 a.m. may have his/her regular working hours scheduled between 6 a.m. and 6 p.m., during the period of his/her jury service, and such change in his/her hours shall not be subject to the contrary provisions of Section 4 of Article VII of this Agreement. Any employee required to be absent from his/her employment to serve on a jury shall receive his/her regular pay for such time as he/she is required to be absent.

If an employee who is scheduled to work between 6:00 p.m. and 6:00 a.m. is summoned to jury duty on an assigned work day, then the Employer shall not require such employee to work between 6:00 p.m. and 6:00 a.m. during the twenty-four hour period immediately preceding the time the employee is required to appear for jury duty. (e.g., if an employee is required to appear for jury duty on Tuesday at 9:00 a.m., and Tuesday is a regularly scheduled work night, then such employee will not be required to work between 6:00 p.m. Monday and 6:00 a.m. Tuesday during the same week.) If an employee is permitted to be absent from his or her regular work day between 6:00 p.m. and 6:00 a.m. during the twenty-four hour period immediately preceding the time the employee is required to appear for jury duty, then such absence shall be without loss of regular compensation. (e.g., if an

41

GUILD00057.0041

employee is required to appear for jury duty on Tuesday at 9:00 a.m., and the employee was scheduled to work from 11:00 p.m. Monday until 7:00 a.m. Tuesday, then such employee shall be permitted to be absent from that work day, without loss of compensation.) Except as otherwise provided in this Agreement, an employee shall not be entitled to any compensation from the Employer for jury duty.

An employee shall be required to report for his or her regularly scheduled work day between 6:00 p.m. and 6:00 a.m. during the twenty-four hour period immediately following the time the employee is released from jury duty. (E.g., if an employee completes required jury duty on Tuesday at 5:00 p.m. and such employee's regular work day begins at 11:00 p.m. then such employee shall report for work at 11:00 p.m. on that same Tuesday.)

If an employee fails to report for work at the start of his first regular work day following the employee's release from jury duty, then such employee shall not be paid for such work day. The employee shall also be subject to appropriate disciplinary action.

Any employee covered by this Section shall notify his or her immediate non-bargaining unit supervisor as soon as possible after such employee learns that he or she is required to be absent from his or her regular work day because of jury duty. If an employee fails to provide the Employer with advance written notice of such an absence and documentation of having served on said jury duty, then any absence by reason of jury duty shall not be compensated by the Employer.

Upon returning to work after completing jury service an Employee shall furnish the Employer documentation confirming such service.

6. This Agreement covers only those matters specifically contained herein and supersedes all prior agreements between the Employer and the Guild, including any letter of interpretation, verbal understanding and/or past practices.

7. Notwithstanding any provision in this Agreement, the Employer may take any and all actions necessary for the Employer to reasonably accommodate any qualified disabled individual pursuant to the Americans with Disabilities Act.

8. It is agreed that the Employer reserves the right to establish and offer, from time to time, termination incentives within a department and/or classification and/or classification within a department for employees who desire to voluntarily terminate.

GUILD00057.0042

9. An employee's by-line shall not be used over his/her protest for the sole purpose of preserving and furthering the professional integrity of the employee's work product.

10. The Employer agrees to provide a minimum of one battery per month to retail outside sales department employees authorized or required by the Employer to us an Employer provided pager.

## ARTICLE XIX - DISCIPLINE/DISMISSAL PROCEDURES

1. The Employer shall not discipline or discharge any employee without just cause.

2. The following procedure of progressive discipline shall be applied by the Employer, except the Employer need not follow progressive discipline before discharge if the discharge is for theft, deliberate damage to Employer property, gross insubordination, serious misconduct, physical violence or other similar offenses.

3. Written warnings must be sent by certified mail (within ten (10) days of the incident) to the Guild Business Manager and be hand delivered to the affected employee, and may be sent by certified mail to the employee's last known address if no other reasonable means of serving notice is available. Warning letters shall not list dates of previous warning letters.

4. The Employer may issue an oral warning(s) prior to issuing a written warning or suspension, which shall be imposed for related offenses as follows:

First offense:    written warning(s)
Second offense:   one (1) day suspension without pay
Third offense:    suspension up to three (3) days without pay
Fourth offense:   further suspension or discharge

5. Warnings and suspensions as provided in Section 4 shall be null and void after twelve (12) months and shall not be used as a basis for further disciplinary action.

6. If grieved, disciplinary suspensions, other than those issued in accordance with Section 2 above, shall not be implemented until the conclusion of a Joint Standing Committee meeting or twenty-one (21) days after the offense, whichever occurs first.

7. These procedures herein provided are subject to the terms of the grievance procedure.

GUILD00057.0043

## ARTICLE XX - SUBSTANCE ABUSE POLICY

1. The Employer shall have the right (with the exception of random testing) to establish, modify, or eliminate 'Testing for Just Cause' policies with regard to employees being under the influence of alcohol, drugs, or controlled substances, and with respect to the use, abuse, possession, manufacture, transfer, purchase or sale (or arranging for the purchase or sale) of alcohol, drugs, or controlled substances by employees. Disciplinary action taken against an employee pursuant to any such policies shall be for just cause and shall be subject to the grievance procedures provided for in Article II of this Agreement.

2. Prior to implementing the Employer's substance abuse policy, the Employer agrees to meet with the Union to discuss the policy and effects of the policy.

3. The following cornerstones shall be a part of any substance abuse policy established by the Employer:

a) Clear written advance notice of the policy will be given to the Union and all employees followed by employee meetings to further explain and respond to any concerns or questions.

b) Only reliable, certified lab(s) with a strict chain-of-custody procedure will be used. Neither the Employer nor the Guild shall witness the sampling without the employee's permission provided the lab allows such observation. At least two (2) samples of the same drug test will be taken.

c) All positive test results will be confirmed by a more extensive second testing procedure and be subject to a post-test review by a licensed physician prior to initiating any formal disciplinary action.

d) Strict confidentiality of test results will be maintained.

e) Employees will be given an opportunity to explain positive test results.

f) Positive test samples will be retained for at least six months and where possible up to one year.

g) Supervisors will be thoroughly trained on drug-testing procedures and the "Just Cause" justifications for testing.

h) The Employer will continue to provide an Employee

44

GUILD00057.0044

Program ("EAP") which offers confidential assistance and referral to employees who have substance abuse problems.

i)    An employee shall not be subject to discipline because of his/her participation in the EAP program.  However, if the employee is subject to discipline for any reason which includes a violation of the substance abuse policy, such employee shall not utilize the EAP as a defense to avoid discipline.

j)    The policy will encompass, among other things, a policy statement setting forth the obligations of employees under the policy.

k)    An employee eligible to return to work after engaging in conduct prohibited by the Substance Abuse Policy, shall undergo a return to work substance abuse screening and may in addition, be subject to unannounced follow-up alcohol and controlled substance tests in the first twelve (12) months following the employee's return to work.


ARTICLE XXI - DURATION AND RENEWAL

1.    This Agreement shall be in effect from June 6, 2004, except as otherwise herein provided, to June 5, 2009, both inclusive.

2.    Within 90 days immediately prior to the expiration date of this Agreement, but not less than 60 days prior to said expiration date, the Employer or the Guild may give notice, in writing, of termination, modification or renewal of the Agreement, subject to negotiations between the parties.  If notice is not given by either party by not less than 60 days prior to said expiration date, the terms and conditions of this Agreement shall remain in effect until at least 60 days after such notice subsequently is given, and in any event shall remain in effect during negotiations resulting from such notice by either party except as otherwise provided in Article I, Section 5.  If any article or portion of this Agreement is found by a court of competent jurisdiction to be illegal, the remainder of the articles or portions hereof shall not be voided thereby and shall remain in full force and effect.

3.    Notwithstanding anything to the contrary in this Agreement, the Guild shall be responsible for compensating its committee members in contract negotiations.  Employees who are members of the Guild's contract negotiating committee will be released to participate in contract negotiations subject to production requirements.  Permission to be released will not be arbitrarily denied.  An employee released from work by the Employer to serve as a member of the Guild's contract negotiating committee shall be considered to be on an approved leave of

45

GUILD00057.0045

absence without pay.

## ARTICLE XXII
## MANAGEMENT RIGHTS

1.  Except to the extent expressly abridged by a specific provision of this Agreement, the Employer reserves and retains, solely and exclusively, all of its normal, inherent and common law rights to manage the business, whether exercised or not.

2.  The exclusive rights of the Employer which are not abridged by this Agreement shall include but not be limited to the following rights: establishing and changing practices and procedures for the conduct of the business; determining and redetermining the methods, processes and materials to be used; establishing and discontinuing processes or operations of the Employer; establishing and changing work and quality standards; evaluating employee performance; establishing and changing rules of work and conduct that it deems necessary; establishing and changing production methods, standards & job content; establishing and changing hours and shifts in accordance with the terms of this Agreement; determining, changing or discontinuing equipment used in the Employer's operation; establishing and changing work schedules and assignments in accordance with the terms of this Agreement; laying off employees in accordance with the terms of this Agreement; suspending or discharging employees for cause in accordance with the terms of this Agreement; making and enforcing safety rules; conducting job studies; subcontracting; otherwise taking such measures not in conflict with this Agreement as management may determine to be necessary for the orderly, efficient, and profitable operation of its business.

## ARTICLE XXIII
## SUCCESSOR CLAUSE

The Employer agrees to meet and discuss with the guild the effects of any sale of the St. Louis Post-Dispatch LLC upon employees in the bargaining unit.

46

GUILD00057.0046

Signed at St, Louis, Missouri, on this 9th day of 2004.

ST. LOUIS POST-DISPATCH LLC

ST. LOUIS NEWSPAPER GUILD/CWA
LOCAL 36047AFL-CIO, CLC

GUILD00057.0047

June 1, 2004


Mr. Jim Light
Business Manager
St. Louis Newspaper Guild
Ten-Fifteen Locust Building
1015 Locust
St. Louis, Missouri 63101

Re: Application of Article VII, Section 15 (Outside Sales Overtime)

Dear Mr. Light:

This letter is to clarify the Company's intentions regarding the application of Article VII, Section 15 and provide the union with certain assurances regarding outside sales employee overtime.

As discussed in negotiations, outside sales employees perform a variety of job responsibilities which sometimes extend beyond regularly scheduled hours as part of their routine job duties necessary to the timely publication and processing of advertising.

For purposes of Article VII, Section 15, the Company agrees to not require outside sales employees to report to work early or stay late on regularly scheduled work days or to report to work on scheduled days off for the purpose of routine sales meetings or training. Nor will the Company require employees to work or be called in for extra weekday or weekend hours as a disciplinary measure. Poor performance for example would be handled under the disciplinary provision of the Agreement.

Sincerely,



Michael M. Hammett

GUILD00057.0048

## LETTER OF AGREEMENT

Notwithstanding Article XVII, Section 6 in the new Agreement between St. Louis Post-Dispatch LLC and St Louis Newspaper Guild/CWA Local No.36047 of the Newspaper Guild AFL-CIO,CLC, the Company and Union have entered into and agreed to this side letter which will be considered part of the new Agreement.

**Outside Sales Employees:** The Company and Union have agreed to attach the June 1, 2004 letter of clarification on Outside Sales Employee Overtime to the new Agreement.

**Grievances:** With the exception of grievances dealing with employee progressive discipline identified in the Company's January 30, 2004 letter to the Union, the Union has agreed to withdraw with prejudice any all outstanding grievances and/or arbitrations to include the current arbitration over STL Distribution..

**Employee Assignment:** The Company and Union agree the deletion of the words "sole discretion" from the first sentence of Article VI, Section 5 will have no impact on the intent of the language.

**Cooperation:** The Union has agreed to actively support and promote patronage of the St. Louis Post-Dispatch.

Agreed to this 7th day of June, 2004.

_____          _____
Company                           Union

49

GUILD00057.0049

| Date Issued | June 7, 2004 | **ST. LOUIS POST-DISPATCH LLC** | Coordinates | 1.1, 1.1a |
|---|---|---|---|---|
| Date Effective | June 7, 2004 | | With Policies | 4.9 5.5 |
| Approved By | T. Egger | **HUMAN RESOURCE POLICY** | Original Date | June 04 |
| Policy Number | 1.36 | | Issued | |

# MATERNITY AND PATERNITY LEAVE AND ADOPTION ASSISTANCE

## GENERAL

In recognition of the unique demands of giving birth, the St. Louis Post-Dispatch LLC provides guaranteed paid maternity leave, in addition to disability time off. The Post-Dispatch also recognizes the needs of spouses or domestic partners to spend time with the child as well as the financial burden assumed when adopting a child unrelated to either parent.

## ELIGIBILITY

The policy applies to all healthcare-eligible full-time and part-time regular employees with one full year of service at the time the leave commences.

For the purposes of this policy, the Flexible Spending Account, which is part of the Pulitzer Inc. Section 125 Cafeteria plan, is not defined as a healthcare benefit.

## UNPAID LEAVE

Under the Family Medical Leave Act (FMLA), a total of 12 weeks of unpaid leave are available for the care of a newborn or the adoption of a child and the policies of the St. Louis Post-Dispatch extend that benefit to certified domestic partners.

Under this policy, the unpaid FMLA leave will run concurrently with earned disability, paid and/or unpaid maternity and unpaid paternity leaves.

## BENEFIT STATUS

Benefits for the employee will be maintained on the same cost-sharing basis as if the employee were actively at work for the duration of the 12-week FMLA leave and/or as provided under any applicable collective bargaining agreement. Maintenance of additional benefits coverage will vary based on policy and practice and will be detailed by the Human Resources Health & Safety Department upon the request of an employee.

The additional child or children must be formally added to the benefit roles within 30 days of the baby's birth or placement in the home if coverage is expected under the Pulitzer Medical Plan.

GUILD00057.0050

**PAY STATUS**

Accrued and unused disability pay will be available to the birth mother while she is off work at the direction of her physician.

Four (4) weeks of paid maternity leave will commence for the birth mother
      1)  Immediately, if she has no available disability pay;
      2)  When her personal physician removes her from disability leave; or
      3)  When her disability leave is exhausted

The four weeks of paid leave will be at the employee's regular rate of pay and for the employee's payroll-designated workweek. Paid leave for part-time or commission employees will be determined on the same bases as vacation.

**PATERNITY UNPAID LEAVE**

In addition to the 12 weeks of unpaid leave, a spouse or domestic partner can request an additional four (4) weeks of unpaid leave. The additional four weeks of paternity leave must be scheduled either immediately following FMLA leave or scheduled according to the business needs of the department.

**ADOPTION ASSISTANCE**

If an employee is adopting a child who is unrelated to either parent, the Post-Dispatch will reimburse up to $1,500 of legal and/or medical costs directly related to the adoption. If both parents are employees, only one can apply for the adoption assistance but bills incurred by both parents are eligible for reimbursement.

**LEAVE DEFINITIONS AND DURATION**

The employee's employment status will be governed by this leave policy, the Family Medical Leave Act and the applicable collective bargaining agreement.

In the event the employee has exhausted or does not qualify for FMLA protection, the employee's position will be guaranteed for the four weeks of paid and unpaid leave and, based on business needs, the unpaid leave may be extended on a case by case basis.

**PROCEDURE**

To ensure solid communications between the supervisor and the employee and to provide advance notice for scheduling, the following procedures will be in place:

GUILD00057.0051

1. Employees who anticipate absences for scheduled surgery, childbirth, adoption or similar reasons must notify their supervisors as soon as they become aware of the impending absence. The notice should include the anticipated start and return dates. The employer may, where appropriate, require a doctor's certification that the applicable employee is able to continue working until the start of the leave period.

2. Within a reasonable period after delivery, employees are required to submit verification from their doctor on a form supplied by the Health & Safety Department of the anticipated date of return to work. A physician's report will be required to substantiate maternity-related disabilities and physician-required extensions to the leave period.

3. Employees must submit a doctor's release prior to returning to work from any disability leave of more than seven days. In the event that employee's doctors place any limitations on an employee's ability to perform their normal job duties, an effort will be made to accommodate the restriction.

4. A birth mother who wishes to extend her leave beyond the 12-week period covered under this policy may do so by applying for a personal leave in accordance with the provisions of the applicable policy or bargaining agreement.

5. Employees who fail to return to work following release by their physician or the company's physician will be subject to termination in accordance with the applicable policy or collective bargaining agreement.

6. In all cases where an employee's ability to continue working or to return to work is in question, the company reserves the right to refer the employee to a physician of the employee's choice at the company's expense.

Human Resources Health & Safety Department can answer questions or assist with this Maternity/Paternity/Adoption policy or other leaves of absence. Health & Safety is on the fourth floor of the downtown plant in the Employee Service Center or is available at (314) 340-8065.

**RESERVATION OF RIGHTS:** Except as otherwise provided under any Collective Bargaining Agreement, the Company reserves the right to amend or discontinue this policy.

**NOTE:** This policy shall be in addition to Company policy 4.9 Sickness and Accident Benefits (Pregnancy Disability), Company Policy 1.1 (Leave of Absence) Policy 1.1a Family Medical Leave Policy - FMLA Act of 1993 (Bargaining Unit Employees) and Policy 5.5 Family Medical Leave Policy – FMLA Act of 1993 (Administrative Employees).

April 2004

GUILD00057.0052

# ST. LOUIS POST-DISPATCH

LLC of PULITZER INC.

**FAX and REGULAR MAIL**
MICHAEL M. HAMMETT
*Director of Industrial Relations*

August 11, 2004

Mr. Jim Light
Business Manager
St. Louis Newspaper Guild
Ten-Fifteen Locust Building
1015 Locust, Suite 740
St. Louis, MO 63101

Re: Correction to Article XIV, Section 2 of the Collective Bargaining Agreement

Dear Mr. Light:

This is in follow-up to our recent telephone conversation in which I advised that we had apparently failed to notice that a sentence had been inadvertently omitted from Section 2 of Article XIV (Security) of the draft of the new Collective Bargaining Agreement (Article XV in the prior Agreement).

The current Article XIV, Section 2 states in part:

"2. The Employer shall notify the guild in writing of the intent to dismiss employees to reduce the force, stating the number, classification and department of jobs affected. Dismissals, to the extent required after any such resignation, shall be made in ........"

The sentence omitted and which appears in the prior collective bargaining agreement as the second sentence of Article XV, Section 2 reads as follows:

"Within a period of two weeks from the date of such notice any employee in a classification within the affected department may resign voluntarily and take dismissal pay under the provisions of Article XV of the Agreement, provided the total of such resignations shall not exceed the number of jobs affected in a given classification within that department."

As we discussed, the first two sentences of the current Article XIV Section 2 should read:

"2. The Employer shall notify the guild in writing of the intent to dismiss employees to reduce the force, stating the number, classification and department of jobs affected. Within a period of two weeks from the date of such notice any employee in a classification within the affected department may resign voluntarily and take dismissal pay under the provisions of Article XIV of the Agreement, provided the total of such resignations shall not exceed the number of jobs affected in a given classification within that department. Dismissals, to the extent required ........". The remainder of Section 2 remains unchanged.

900 N. TUCKER BLVD. > ST. LOUIS, MO 63101-1099 > PHONE 314-340-8050 > FAX 314-340-3177 > mhammett@post-dispatch.com

Printed on recycled paper

GUILD00057.0053

Per your request, the Company has mailed the guild a corrected page to the new Collective Bargaining Agreement.

Please immediately advise, if the union has any concerns or is in disagreement with this correction.

Sincerely,

Michael M. Hammett
Director of Industrial Relations

Cc:  Contract Negotiations File